**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

___

ERIC JAROS,

      Plaintiff,           Hon. _____

v.                                No.  24-12547

DETROIT ENTERTAINMENT, L.L.C.      DEMAND FOR JURY TRIAL
D/B/A MOTORCITY CASINO

      Defendant.
___

Matthew J. Clark (P76690)
Garner Dusa (P87513)
Gregory, Moore, Brooks, Clark & Helton, P.C.
*Attorneys for Plaintiff*
28 W. Adams, Ste. 300
Detroit, MI 48226
(313) 964-5600
Matt@unionlaw.net; Garner@unionlaw.net
___

## COMPLAINT AND JURY DEMAND

Plaintiff Eric Jaros, by and through his undersigned counsel, states the following:

### INTRODUCTION

1. This is an action arising out of Defendant Detroit Entertainment, L.L.C. d/b/a/ MotorCity Casino's ("MotorCity") refusal to accommodate Plaintiff Eric Jaros' medical condition, discriminating against him due to his disability, and terminating him, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.,

1

and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, et seq.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331, because Plaintiff's claim under the ADA constitutes a federal question.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), because Plaintiff's claim under the PWDCRA is so related to the federal claim under the ADA to form part of the same case or controversy between Plaintiff and Defendant.

4. Plaintiff files this action after filing a charge over the matter with the Equal Employment Opportunity Commission (EEOC), which issued him a notice of right to sue on or about July 1, 2024.

5. Plaintiff is a resident of Oakland County, Michigan.

6. Defendant is a domestic for-profit corporation incorporated under the laws of Michigan doing business in Oakland County, Michigan.

7. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), because this is the judicial district in which a substantial part of the events giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff was employed by MotorCity as a Trainer in the Learning Development Department from 2014 to 2018.

9. Plaintiff again was employed by MotorCity as a full-time Training Manager from January 2022 until being terminated on May 23, 2024.

10. Several months after January 2022 and returning to work as a Training Manager at MotorCity, Plaintiff began to experience seizure-like episodes of lightheadedness where he was unable to focus and often needed to lie down to recover.

11. On or about May 6, 2022, Plaintiff requested medical accommodation from MotorCity.

12. Plaintiff's medical accommodation request was made with his doctor's recommendation and requested that Plaintiff be allowed to leave work or stay at home when he suffered episodes.

13. MotorCity granted Plaintiff's medical accommodation request on May 18, 2022, and noted that the accommodations are most effective considering Plaintiff's job function and MotorCity's needs.

14. From approximately June 2022 to July 2022, Plaintiff went on approved medical leave to seek medical treatment and advice for his condition.

15. Plaintiff was ultimately diagnosed with low blood pressure.

16. On or about August 29, 2022, Plaintiff returned to work at MotorCity in his role as a Training Manager with reasonable accommodations.

17. Plaintiff's reasonable accommodations upon returning to work included working remotely and part-time either consecutive or non-consecutive hours in order for Plaintiff to be able to lie down and recover from his episodes.

18. In or around October 2022, Plaintiff increased from working 20 hours per week to roughly 30 hours per week with the goal of eventually returning to full-time employment with MotorCity.

19. Plaintiff maintained excellent performance at his job duties with MotorCity during his time working remotely.

20. Plaintiff worked remotely for approximately a year through April 2023.

21. On or about April 24, 2023, Plaintiff's doctor completed a fitness for duty certification clearing Plaintiff to work a full 40 hours per week.

22. Plaintiff's fitness for duty certification noted Plaintiff may need to lie down in the event of low blood pressure symptoms, and that these symptoms may appear randomly. Plaintiff's fitness for duty report also stated that Plaintiff would benefit most by working remotely but could work in person two days per week.

23. The two days Plaintiff was approved to work in person under the fitness for duty certification was in reference to Employee Learning Sessions which Plaintiff directed for MotorCity.

24. At the time, MotorCity was interested in moving these Employee Learning Sessions from a remote to an in-person format.

25. Plaintiff was willing to attend these Employee Learning Sessions in person roughly one to two times a week even though Training Managers such as Plaintiff often did not directly conduct these sessions but served in a less active directing role.

26. Plaintiff's only other in-person aspect of his role as a Training Manager was a once-a-quarter Management Meeting.

27. Generally, Plaintiff would be able to attend these meetings, but in the event of symptoms from Plaintiff's medical condition, MotorCity could have easily allowed Plaintiff to appear remotely or excuse him from this non-essential meeting.

28. MotorCity terminated the Plaintiff's employment on or about May 23, 2023, without explanation or justification.

29. Prior to the termination, MotorCity allowed Plaintiff to work with reasonable accommodations for approximately a year with no undue hardship to MotorCity.

30. Plaintiff's work during this roughly year of reasonable accommodation, as well as Plaintiff's fitness for duty report allowing less accommodation and more hours available, show it would be possible for MotorCity to successfully continue Plaintiff's employment rather than resort to termination.

31. After receipt of the fitness for duty report, MotorCity terminated Plaintiff rather than engage in an interactive process to determine weather Plaintiff could continue to be offered reasonable accommodation.

32. MotorCity's termination of Plaintiff's employment is a violation of both the ADA and PWDCRA.

## COUNT I
### Failure to Accommodate under the Americans with Disabilities Act
### 42 U.S.C. § 12101 *et seq.*

33. Plaintiff realleges the preceding paragraphs as though fully stated herein.

34. Under the ADA, an employer is required, upon learning of an employee's health condition, to initiate an interactive process to determine whether it can offer the employee a reasonable accommodation for their disability that would allow them to perform the essential job functions. 29 CFR § 1630.2(o)(3); 29 §CFR 1630.9.

35. Under the ADA, an employer's failure to grant a reasonable accommodation for a qualified individual constitutes unlawful discrimination on the basis of disability. 42 U.S.C. § 12112(b)(5).

36. Due to his medical condition of low blood pressure, Plaintiff was a qualified individual with a disability under the ADA.

37. Plaintiff was entitled to reasonable accommodation for his disability, which could have simply been for MotorCity to to allow him to lie down when he became lightheaded, and to continue the accommodation that was already provided for nearly a year allowing Plaintiff to work remotely several days per week.

38. MotorCity failed to provide Plaintiff with reasonable accommodation for his disability.

39. MotorCity also failed to initiate the interactive process to determine whether it could continue to offer Plaintiff a reasonable accommodation that would allow him to perform the essential job functions.

## COUNT II
**Discrimination in Violation of the Americans with Disabilities Act
42 U.S.C. § 12101 *et seq.***

40. Plaintiff realleges the preceding paragraphs as though fully stated herein.

41. Under the ADA, employers are prohibited from discriminating against an employee due to their disability.

42. MotorCity terminatied Plaintiff due to his disability, in violation of the ADA.

## COUNT III
## Retaliation in Violation of the Americans with Disabilities Act
## 42 U.S.C. § 12101 *et seq.*

43. Plaintiff realleges the preceding paragraphs as though fully stated herein.

44. As set forth in the preceding paragraphs, MotorCity retaliated against Plaintiff under the ADA when it terminated his employment as a result of and in response to him notifying them of his disability and his protected request for a reasonable accommodation.

45. Such conduct violated the ADA anti-retaliation provisions, including but not limited to 42 U.S.C. § 12203 and 29 C.F.R. § 1630.12.

## COUNT IV
## Failure to Accommodate under Michigan's Persons with Disabilities Civil Rights Act
## MCL 37.1101 et seq.

46. Plaintiff realleges the preceding paragraphs as though fully stated herein.

47. Under the PWDCRA, an employer is required, upon learning of an employee's health condition, to determine whether it can offer the employee a reasonable accommodation for their disability that would allow them to perform the essential job functions.

7

48. An employer's failure to grant a reasonable accommodation for a qualified individual constitutes unlawful discrimination on the basis of disability.

49. Due to his medical condition of low blood pressure, Plaintiff was a qualified individual with a disability under the PWDCRA.

50. Plaintiff was entitled to reasonable accommodation for his disability, which could have simply been for MotorCity to continue to allow Plaintiff to work remotely several days per week as was done for nearly a year up until Plaintiff's termination.

51. MotorCity failed to provide Plaintiff with reasonable accommodation for his disability.

52. MotorCity also failed to determine whether it could offer Plaintiff reasonable accommodation that would allow him to continue to perform the essential job functions.

## COUNT V
## Discrimination in Violation of Michigan's Persons with Disabilities Civil Rights Act
## MCL 37.1101 et seq.

53. Plaintiff realleges the preceding paragraphs as though fully stated herein.

54. Under the PWDCRA, an employer is prohibited from discriminating against an employee due to his disability. MCL § 37.1202.

55. MotorCity's termination of Plaintiff because of his medical condition constitutes unlawful disability discrimination.

## COUNT VI

**Retaliation in Violation of Michigan's Persons with Disabilities Civil Rights Act
MCL 37.1101 et seq.**

56. Plaintiff realleges the preceding paragraphs as though fully stated herein.

57. The PWDCRA prohibits an employer from refusing to hire or discharging an individual because of a disability that is unrelated to the individuals' ability to perform the duties of a particular job or position. MCL § 37.1202.

58. As set forth in the preceding paragraphs, MotorCity retaliated against Plaintiff when it terminated his employment as a result of and in response to his notifying them of his disability and his protected request for reasonable accommodation.

## RELIEF REQUESTED

Plaintiff respectfully requests that this honorable Court enter judgment against Defendant as follows:

a. Declare that Defendant violated Plaintiff's rights under the ADA;

b. Declare that Defendant violated Plaintiff's rights under the PWDCRA;

c. Award Plaintiff all damages to which he is entitled, including, but not limited to all economic, non-economic, special, general, compensatory, punitive, exemplary, or other damages;

d. Award Plaintiff his reasonable attorney fees and costs;

e. Award Plaintiff pre-judgment and post-judgment interest; and

9

  f. Award Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all counts.

        Respectfully submitted,

        /s/ Matthew J. Clark
        Matthew J. Clark (P76690)
        Gregory, Moore, Brooks, Clark & Helton, P.C.
        28 W. Adams, Ste. 300
        Detroit, MI 48226
        (313) 964-5600
Date: September 27, 2024  Matt@unionlaw.net